Good morning everyone. We shall start with an admission. Mr. Rowland, will you come forward? I invite Judge Schall to move as he wishes. Judge Newman, thank you very much. I do have a motion and it's one I'm very pleased to make. I move the admission of Daniel Francis Rowland, who is a member of the Bar and is in good standing with the highest courts of the District of Columbia and Maryland. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I would just add, parenthetically, these are sort of the magic words or the official words that have to be spoken. I would just add a tiny gloss by saying that Dan has been working with me as a clerk since October. He's done an excellent job and I'm sure that he will be an excellent addition to the Bar of the Court and I look forward to seeing him before us. Thank you for the motion. The panel will vote on the motion. Do you have a vote? And I also share the view. The motion is granted and welcome to the Bar of this Court. And will you be administering the oath? Please address the panel. Thank you. Welcome to the Bar, Mr. Rowland. We will proceed with the first argued case this morning. It is Aldridge v. McDonald. May it please the Court, Natalie Bennett on behalf of the veteran, Marion Aldridge. The Supreme Court standard is whether extraordinary circumstances stood in the way of filing, not whether the circumstances stood in the way of doing all things. Here the Veterans Court misapplied the Supreme Court standard. The majority opinion offers no findings on whether the circumstances were extraordinary and no findings on whether the veteran was diligent. Veterans Court erred in finding that Mr. Aldridge's ability to do certain things extinguished the connection between the extraordinary circumstances and the late filing. The fact that the veteran could do certain things on autopilot after experiencing three family tragedies does not answer the question of whether the extraordinary circumstances prevented him from filing. Following the Supreme Court's recent decision in Menominee Tribes of Wisconsin v. United States, we'll agree for purposes of discussion today that it would be appropriate for a litigant to show a generalized connection or nexus between the extraordinary circumstances and the late filing. The only evidence in this record is that there was such a nexus between the three family tragedies, Mr. Aldridge's ensuing grief, and the late filing. There's nothing contrary. What the Veterans Court was looking for was full incapacitation. And short of that showing, it seems like nothing would have sufficed. Ms. Bez, I understand it. And please correct my file. I'm wrong. Excuse me. Your basic argument is that the Veterans Court applied what I think you refer to as kind of a hybrid test that asks whether the circumstances directly or indirectly prevented his appeal from being timely. I think that's what you say. And you take issue with that as imposing some kind of a causation requirement as opposed to the roadblock requirement. Do I have it right so far? I think that is correct, and I think that that accurately captures the focus of the opening brief, which was submitted prior to Menominee being issued by the Supreme Court. And that's what I'm saying. I mean, you've labored well here in representing your client, but I'm wondering if Menominee doesn't make it clear that causation is kind of the name of the game. I think that after Menominee, there were some additional clarifications, and that was one of them, that there should be some generalized showing between extraordinary circumstances and the late filing. The issue that we have here is there were no findings as to whether the circumstances were extraordinary. The Veterans Court just jumped straight to the prevented from filing element, and I don't think that you can separate them. I think you have to first make a determination, were the circumstances extraordinary? If the answer is no, then the inquiry stops. But here we don't know whether the circumstances were extraordinary. To the extent we want to, I'll accept the generalized nexus or connection. I wouldn't agree that it has to be some sort of direct result to approximate causation, but we believe that that showing was made in the record. I think at A36 through A38, the veterans submitted quite a few statements about how his depression and his grief caused him to miss the deadline. And it looks like the Veterans Court just ignored that and wanted to look at what he did do or didn't do. And I think this point is important and is maybe not... Do you think the court there was looking to see whether a causation element was met? Namely, if he did all these other things and functioned effectively in these other areas of his life, there was not a causal connection between the grief and the hardship of the loss of the three individuals. I believe that that is an error because another clarification... But you think that's what the court did. Yes. Menominee also clarifies that when you're looking at the extraordinary circumstances element, you're only looking at affairs outside of the litigant's control, the external factors. That would not have been whether he could take care of his father or whether he was going to work. Those are matters within his control, and Menominee says that matters within a litigant's control would properly be analyzed under the diligence prong. So in addition to skipping over the extraordinary circumstances analysis, there's a conflation between the two elements that I believe is a separate legal error that would warrant remand for the analysis to be done under the proper circumstances and at the very least a threshold determination that whether the circumstances were extraordinary because only when you know if they're extraordinary can you know if they're connected to the late filing. Well, just thinking about this, I don't think anybody can really argue that the death of your mother, your sister, and your grandchild all in this period of time when the filing was supposed to be made was anything other than extraordinary. It wasn't the concern that the veteran showed that he was able to cope and to handle all of these extraordinary circumstances and therefore the delay in filing was something that can't be excused. Was there any argument before the veterans court that the standard for delay or extraordinary circumstances or whatever should be different when we're dealing with veterans because it is the nation's policy to accommodate veterans' problems when they can be accommodated? All that we have here is a delay in filing. There were a couple of things you said in your question, Judge Newman, so I'm going to try and take them in tandem here. The first point that you made I would agree with that the circumstances would be extraordinary. I think if you were to ask the VA, they're going to get up here and argue that this is garden variety, excusable neglect. So I do think there is perhaps some dispute as to what the two parties' positions are. But did they actually say that? I didn't think that they disputed that it was extraordinary, and I don't think that they came down on a standard of neglect. Their standard was that because the veteran was able to handle all of these circumstances, he should also have been able to handle the six-month filing period. That is the argument. I think what the veteran can handle, what he could do, what he couldn't do might fit within the diligence prong, which is specifically looking at things within the litigants' control, whereas the extraordinary circumstances and prevented from filing is focused on external factors, things that the universe puts in your path and that you have to grapple with. I don't dispute your characterization of what the Veterans Court found here. In terms of the argument about whether a veteran should have, I think the case law or the legislative history says, when in doubt, the tie should go to the veteran. When it's a reasonably close situation that their service to their country and their sacrifice for the life and liberty of us all does weigh in favor of letting the tie go to the veteran. So that argument was made below. It's made here. I think it's unclear in this Court's precedent how much weight that is given. And I think the Veterans Court, at least the majority opinion, didn't focus on whether veterans should be treated in accordance with their special circumstance because it is a non-adversarial way of pursuing the claim. Can I ask you a record question? Is there something in the record that indicates why June 30th was the date that you identified as the date at which the, I forget what the phrase was, but that the depression began to fade or something like that? Right. There is not an explanation of that in the record. I can tell you that Mr. Aldridge has a very difficult time with dates and kind of keeping track of when things happen. No, but I mean, you understand that the reason for the question is that it happens to be 119 days before the filing. If it had been June 28th, then even your argument about 120 days wouldn't have made a difference. It seems fortuitous that June 30th was the date identified, and I wondered if there was a medical report or something that indicated June 30th as distinct from June 28th. There is nothing that makes no medical report or anything to that extent. The veteran's statement is that in the summer is when things kind of started coming back together for him, and he's sworn that June 30th is the date where he would approximate. He started to feel like he was no longer in a period of extraordinary circumstances. Actually, can you maybe help on the following doctrinal point, which at least to my mind is a little bit confusing? What do you understand to be the scope of our statutory authority to discuss, think about, rule on questions about whether particular facts amount to satisfying equitable tolling, either as a matter of law or arguably or what? I'm a little confused about the meaning of the Bailey language and as then most recently, I guess, applied in Snead. Both Snead cases, both Snead v. Shinseki and Snead v. McDonald, talk about the scope of this court's jurisdiction, and most recently in Snead v. McDonald, the court acknowledged that there would be some application of law to fact and that this court would be authorized to review it when there are no material facts in dispute and the outcome would turn on the application of the correct legal standard. I think Snead v. Shinseki is significant because there's discussion there about the Federal Circuit. Their review was really focused on even if the standard was not in dispute, was it applied too narrowly? And that was really the thrust of the analysis in Snead is that they found that the Veterans Court was too narrow in going through the analysis and that they were going to send it back for a more broad review. But just to be, I guess, this seems right. Your brief asks us to conclude that if you look at these facts as a matter of law, they compel a finding of equitable tolling and that would come within, I think, the narrowest possible meaning of Bailey. So broader questions about remanding to figure out the application if the standard were corrected, that's not really what you're arguing here. I think this court has the discretion to look at the record and is just as well positioned as the Veterans Court to do so and to apply it and to make a legal conclusion or determination. But that assumes that it's a legal conclusion. Being well positioned is not the same thing as being statutorily authorized. As you know, our jurisdiction in veterans cases is not the normal judicial view of agency action. We're a second tier court limited in quite constrained ways. I would agree that this court could render a judgment. But given that there have been no findings on the diligence prong, I think it would make sense to send it back to the Veterans Court to make findings as to whether the circumstances were extraordinary. And if they were extraordinary and stood in the way in filing, then they would have to do a diligence analysis in the first instance. So you would read Bailey as at least as allowing us or requiring us to conclude that one of two components as a matter of law is satisfied. Yes, I think either whether it's this court or the Veterans Court, I think there are determinations to be made. I think this court has some discretion and I think that the normal practice is typically to send it back to the Veterans Court and we would be asking for such a relief. What I think is important is that there's a threshold determination under the Supreme Court's standard just simply stated. And that's really, I think, what we're asking for here. But on our very limited standard of review, I wonder whether the primary question for us is whether, as a matter of equity and discretion, rather than law, we should restate the standard in terms of the amount of weight, extra weight, on the side of an equitable issue favoring the veteran. That would absolutely be within the purview of this court and is what Mr. Aldridge is absolutely asking for, that there does seem to be some tension within the case law and that this court is best positioned and really the only court that can flesh out what the appropriate standard is, how to take into account the fact that this is a veteran and not a habeas case. And so we absolutely would ask that this court were to take on that analysis. Okay, let's see what the government has to say. Thank you. Mr. Heldman. Good morning, Your Honors, and may it please the court. I'd like to pick up on the very limited jurisdictional scope of this court's authority to review and reweigh facts and the application of law to facts. Our position is that, aside from cases where the Veterans Court sets per se or very categorical legal rule, this court is sexually limited from reweighing or reviewing the facts below. So in the Bailey case and that line of cases, the notices of appeal in those cases were timely filed. They were filed with the wrong court, and the Veterans Court held that such a notice could never qualify for equitable tolling. This court, I think, in several of those cases, including Bailey and Jacque, remanded and said, no, these categorical rules are not proper in the arena of equitable tolling, and the Veterans Court can examine whether equitable tolling applies. That is not the case we have here. It is, isn't it, excepting that it's not for us to reweigh the facts. But if, in fact, the equitable standard should be that stated by the dissenting opinion in the Veterans Court, do you disagree that that's within our appellate jurisdiction? If the legal standard as applied by the court was incorrect, then yes, that is correct. The equitable standard. The equitable standard. But the majority opinion here stated the correct equitable standard for tolling and applied that standard. They didn't really say in the majority that there should be special deference to veterans, a particular accommodation to extreme circumstances. Respectfully, Your Honor, I think the veterans' opinion did acknowledge the regrettable and sympathetic circumstances that Mr. Aldridge encountered, and it looked at equitable tolling as a possible remedy. In other contexts, non-veterans in ordinary civil litigation would already face higher hurdles. They would have a much shorter period of time to file their notice of appeal. That notice of appeal, even filing a notice of appeal to this court, is not subject to equitable tolling because it is jurisdictional. Veterans do get a special solicitude in these matters, and they are entitled to try to show equitable tolling. The issue here is that the veterans' court concluded, after weighing the conflicting facts in the record, that Mr. Aldridge's regrettable and sympathetic circumstances did not prevent him from filing a notice of appeal on time. What he said was that he put all of these family obligations first until they were sufficiently resolved for him to turn to his own circumstances. Now, that's been raised, perhaps, as a matter of diligence, but I gather that those facts were not fully explored on the theory that having put all of these family obligations first showed an intellectual competence and a physical competence to handle things that needed to be handled, rather than whether, in fact, there was a generous view of taking the family obligations first. Your Honor, I think the court below acknowledged those circumstances, and it looked at Mr. Aldridge's depression and his claim that he lost sense of time and had difficulty carrying out routine tasks, but the court also considered the fact that he was able to administer the estates of two family members, that he continued in his job, that even during the period of his depression, he was able to review law firm literature pertaining to his claim and to submit, to fill out a form and send it back to the law firm. And I think the court below held that, based on those circumstances, Mr. Aldridge's depression and the deaths that caused that depression did not prevent him from making those filings. I think that is a determination that that court makes in the first instance, and under 38 U.S.C. 7292, this court is precluded from reweighing those facts and giving them a different weight. What I understand you're saying is, Mr. Hellman, it's within our purview to determine whether it was correct for the Veterans Court to assess whether these factors caused him to be unable to file on time, to qualify for equitable tolling, in other words, but we can't, we can do that, you would say, but then you would say we can't go in and second guess the way the court went about it and said, well, this properly didn't hold him up and so forth. Is that correct? That's correct, Judge Howell. Yes. And that causation standard is required by the Supreme Court and by this court's precedent. I think there's a little bit of a moving target because the opening brief said that there was no causation standard required. I think now they concede after the Menominee decision that used the actual word cause that there is a causation requirement. Here, the Veterans Court used a fairly broad construction of causation. It quoted the Supreme Court language, which talks about an extraordinary circumstance standing in the way and preventing, and it said that either directly or indirectly, these circumstances did not prevent the filing. Can you – I guess I'm a little puzzled why causation came into this appeal from the beginning. Tell me if I'm misremembering. I thought what the Veterans Court said was that Mr. Aldridge argued that the McCreary causation standard was no longer good law because equitable tolling had been interpreted by the Supreme Court in the habeas context in a way that didn't include it and we should stop applying that standard. The Veterans Court said, interesting argument, but it has no effect on this case. We're not applying the causation standard. We are applying the Holland prevention standard. Indeed, we're being slightly more generous than Holland because we're saying he didn't even show indirect prevention, not just direct prevention, and so we just don't need to consider in this case whether causation under McCreary remains a requirement or not. Have I misunderstood that? That's correct. That's correct, Judge Strato. The veteran below tried to argue that in light of Holland, the McCreary three-part test, which breaks causation out as a separate prong, is no longer valid. Causation has always been a part of equitable tolling. Equitable tolling, it has just been phrased differently as the extraordinary circumstances prevent the timely filing. That's essentially saying that the extraordinary circumstances cause the late filing. But the Menominee case clarified that and used the word causation so that this is just the semantic difference. There's not a substantive dispute as to what the standard should be. Our position is that the veterans court correctly chose to focus on the causation prong and does not need to examine at the outset whether the circumstances were extraordinary. I'm going to just try this again because I guess the more you talk, the more confused I am. I thought that the veterans court said we don't care in this case about causation, completely irrelevant. We are deciding this case by applying Holland to say his circumstances, Mr. Aldridge's circumstances, did not directly or indirectly prevent him from filing a notice of appeal. Since we're applying the Holland standard, we have no occasion whatsoever in this case to consider how that standard relates or doesn't relate to McCreary's causation standard. So every time you say they focused on causation, I keep thinking, I thought they said at top of day three, we're not focusing on causation to the extent that word means anything different from the prevention language. I think that's exactly right, Your Honor, and I'm sorry to have confused the issue. They did not focus on the word causation to the extent that it means anything other than prevent, which is the test that the Supreme Court articulated in Holland. So the veterans court used the language of the Holland decision about whether the extraordinary circumstances prevented. And there was some discussion earlier. I didn't remember anything. Did the veterans court essentially assume that these circumstances are in fact extraordinary or did it say something to the contrary? That's correct, Your Honor. The veterans court did not make a definitive ruling as to whether or not these circumstances were extraordinary because it assumed that even if they were, they did not prevent. They didn't have the requisite preventive effect. That's exactly correct. And our position is that that is permissible. The veterans court does not, in every case, need to make a determination that the circumstances were extraordinary before continuing on to the other prongs of equitable telling. The court, if it finds that the veteran was not duly diligent, can also decline to invoke equitable telling without considering that. Can I just ask you, do you know anything more about the record than I think Ms. Bennett described about where this June 30th date comes from? I don't, Your Honor. Testimony from Mr. Aldridge or a declaration or something, or was there some real world event on June 30th that that date reflects? There's a declaration from Mr. Aldridge, and this is at 837, that he identified the end of June as the period of time when he was more capable of coping with his depression. Beyond that, I did not come across anything in the record. Another point I'd like to turn to is whether, you know, there's this question in the reply brief that Mr. Aldridge was not, that the veterans court misapplied the standard because it invoked the Barrett line of cases that are applicable to mental illness, and Mr. Aldridge was not claiming mental illness. The thing I'd like to note there is that the Barrett case talks about, that was a case that looked at whether equitable telling would be applicable in cases of mental illness, but one of the cases that Barrett examined was a First Circuit case, and we also cite this in our brief, Melendez-Arroyo. And at 363 of 3rd, 1321, the Barrett court has a parenthetical talking about, again, it's talking in the context of mental illness preventing the timely filing. It says, it is clear that merely to establish a diagnosis such as severe depression is not enough. That diagnosis has to prevent the timely filing. That is notable, though, because it doesn't, Barrett doesn't strictly talk about mental illness the way that Mr. Aldridge interprets it in his reply brief. It talks about other mental conditions such as severe depression, which Mr. Aldridge claims is what he had during this time. So our position is that the veterans court correctly applied Barrett and cited to that very page for the proposition that even though it took Mr. Aldridge at his word that he had severe depression during that period, he did not show that the depression prevented him from filing the appeal. Okay. Any more questions? Any more requests? Thank you, Mr. Hellman. Thank you. We respectfully ask that you move on. Thank you. Ms. Bennett, you have two minutes for rebuttal. I'll just briefly touch on the last point Mr. Hellman made about the Barrett case. The Barrett case talks about mental illness and mental incompetence, and I think that that is distinguishable from what we have here. Anyone in this courtroom could lose people that are important in their lives and be extremely sad about it. It doesn't make them mentally incompetent. It makes them overwhelmed with grief with some emotional limits that I would argue are very different from being mentally incompetent. I think at the beginning of the argument, there were questions about whether this case was like Snead v. Shinseki and whether there was a requirement for an exclusive type parameter. I think that the reasoning that the Veterans Court, the majority applied here, was that short of being incapacitated, there was no showing that Mr. Aldridge could have made that would have convinced him that equal tolling was available because he was still going to work and taking care of his family and doing things that people do on autopilot even when they are experiencing extraordinary circumstances. So even if things were to have gotten a lot worse, I think the Veterans Court, based on the reasoning they applied, would have come to the same conclusion, and that is error because I don't think you can separate the first question about whether it's in extraordinary circumstances from the question of whether someone was prevented from filing. Whether he was prevented from filing does not turn on what he could or could not have done. The standard is not, was it impossible for him to file? The standard was, did the circumstances stand in his way? And the undisputed record here shows that they did. Thank you. Thank you, Ms. Bennett. Mr. Holman, the case is taken under submission.